Brinkerhoff, J.
This is an action of assumpsit, brought prior to the adoption of the code of civil procedure, in the commercial court of Cincinnati; and the declaration contains only the common counts on promises by the intestate in his lifetime, and like counts on promises by the administrators. The case having been appealed to the district court, was submitted, on the evidence, without the intervention of a jury; and the court having found the issue of non-assumpsit for the defendants, the plaintiff moved for a new trial, on the ground that the finding of the court was against the law and the evidence. That motion was reserved for decision here.
The testimony embodied at length in the bill of exceptions, discloses substantially the following state of facts:
The defendants’ intestate, Moore, was an aged man, and a widower, residing on his farm in the near neighborhood of the farm and residence of the plaintiff, Hamor and his wife. The old man was a very frequent visitor at the plaintiff’s house — as often, on an average, perhaps, as twice a week. He came and went with much the same freedom and familiarity as if he were a member of the family, and was always received with cordial kindness and hospitality. "When present, he always had a seat at the table, and, in the preparation of food, the plaintiff’s wife took pains to consult and gratify his tastes and appetites. She also often sent cakes and other delicacies to the old man at his residence; and, in harvest time, he frequently got liquor from the plaintiff for himself and his harvest hands.
Shortly before his death, the intestate executed a paper writing, of which the following is a copy:
“ For value received, I promise to pay to Mrs. Hamor, wife of John Hamor, the sum of $300, as a small recompense for the kindness shown to mo by her. The executors of my last will and testament are hereby directed to pay the above to Mrs. Hamor, or her sons, Moses and John, after my decease.
“Attest: Phiiup Riggs. JOHN E. MOOKE.
“ Feb. 28th, 1850.”
*242 Moore placed this paper in the custody of Biggs, the subscribing witness, with directions to deliver it to Mrs. ITamor, after his (Moore’s) death; which was done.
Biggs had previously drawn a will for the old man, and was named executor therein; but for some cause, not disclosed in the case, the same has never been proved and admitted to record.
On the foregoing state of facts, did the court below err in finding that the plaintiff was not entitled to recover ?
1. Here was no gift inter vivos, for there was no delivery during the life of the intestate, and no such delivery was intended by him; and to a valid gift inter vivos, delivery and acceptance, either actual, cozzstruetive, or symbolical, are every where held to be essezrtial. And had the paper, by the intestate or his order, been delivered in his lifetime, nothing would have passed to the donee but the title to the paper as paper; for, if there was no legal considez’ation, the promise would be void; while, on the other hand, if there were a good consideration to sustain the promise, it would not be a gift — it being essential to a gift that it should be voluntary and without consideration.
2. Nor do the facts present the case of a gift causa mortis. A delivery during the life of the donor, and subject only to his implied power of revocation during life, is as essential to a good gift causa mortis as to a gift inter vivos. And even if there had been a delivery of the paper during the life of the donoz’, “ the gift of the makei-’s own note is the delivery of a promise only, and not of the thing promised, and the gift, therefore fails.” Kent’s Com. 438. Harris v. Clarke, 3 Comst. Rep. 93.
3. The paper is not good as a testamentary disposition; because it is not executed in the manner which the statutes prescribe.
4. But the plaintiff’s counsel contend, that the paper is evidence of a promise by the intestate; that the case discloses a consideration in law to support such promise; and that assumpsit, therefore, may well be supported upon *243 such, promise. "We do not think so., The generous kindness and hospitality displayed by the plaintiff and family towards the intestate, were, doubtless, truly commendable, and laid a just foundation for the gratitude which he manifested ; and it may be a matter of regret that his gratitude should be baffled by legal objections; but it does not appear that the plaintiff ever made, or intended to make, any charge against the intestate for the benevolence of which he was the object, and, in view of the whole evidence, the contrary is very apparent. Had it been intimated that these acts of kindness were done with a view to a pecuniary reward, both parties would, probably, have resented the imputation as a slander on the motives of their author. And it seems now to be the settled doctrine of the courts, that a mere gratuity, which, without a special promise, would not, in law, imply a promise to pay, is not a good consideration to support an express promise to pay —or, in other words, a mere moral obligation, where a legal obligation never existed, is not a good consideration for an express promise. 1 Pars, on Contr. 358, and notes.
Motion for new trial overruled, and judgment on the. finding of the court.
Swan, Scott and Sutliee, JJ., concurred.